UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL CHRISMAN, | Case No. 2:19-cv-01219-KJD-EJY |
| Petitioner, | **ORDER** |
| v. | |
| JERRY HOWELL,[1] et al., | |
| Respondents. | |

Petitioner Michael Chrisman, who was sentenced to 34 to 120 months in prison after a jury found him guilty of driving under the influence (hereinafter "DUI"), filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (*See* ECF Nos. 1; 24-3.) This matter is before this court for adjudication of the merits of Chrisman's petition, which alleges that (1) the prosecution failed to prove the element of a "highway," and (2) the use of his 1999 DUI-causing-death conviction to enhance his instant DUI to a felony violates the prohibition against *ex post facto* laws. (ECF No. 1.) For the reasons discussed below, this court denies the petition and a certificate of appealability.

**I.   BACKGROUND**[2]

Sergeant Kenneth Rios with the Las Vegas Metropolitan Police Department testified that on January 2, 2013, at about 8:20 p.m., he was "in the area of West Warm Springs Road, near Cimarron" in Las Vegas, Nevada, when a "2006 Toyota SUV, gray in color" drew his attention. (ECF No. 20-1 at 35, 37–38.) Sergeant Rios saw the vehicle make a lane change to accelerate past

---

[1] The state corrections department's website indicates Chrisman is on parole. Should there be any further proceedings in this federal matter, the parties should substitute a proper current respondent in the place of Jerry Howell.

[2] This court makes no credibility findings or other factual findings regarding the truth or falsity of the evidence from the state court. This court's summary is merely a backdrop to its consideration of the issues presented in the case.

another vehicle and "visually estimated the vehicle [was] traveling at 65 miles an hour in a zone posted for 35." (*Id.* at 39, 141.) The speed of the vehicle was confirmed by radar. (*Id.* at 39.)

      Sergeant Rios initiated a traffic stop of the vehicle and contacted the driver, Chrisman. (*Id.* at 43, 45.) While speaking with Chrisman, Sergeant Rios "noticed his speech was a little thick, a little slow, and he had a moderate odor of alcoholic beverages coming from his person." (*Id.* at 45.) Sergeant Rios removed Chrisman from the vehicle "to conduct a further investigation to see whether or not he may or may not be impaired." (*Id.* at 47.) Once Chrisman was out of the vehicle, Sergeant Rios noticed that Chrisman's pupils were dilated, "[h]is eyes were glassy and a little watery," and "[h]is gait was a slight sway." (*Id.* at 47–48.) Sergeant Rios "conducted the standardized field sobriety test," including "the horizontal gaze nystagmus," the "walk and turn test," and "[t]he one leg test." (*Id.* at 48, 51, 54, 56.) Chrisman failed two of the tests and failed to complete the third. (*Id.* at 54–55, 57.) Chrisman was transported to the jail where an EMT conducted two blood draws at 9:45 p.m. and 10:44 p.m., respectively. (*Id.* at 60–61, 72, 228, 230.) Once the blood was drawn each time, the EMT "turn[ed the vials] upside down a couple of times because there's a substance in there that needs to mix with the blood." (*Id.* at 228.) The first blood draw was tested and found to have "0.174 grams of ethanol in 100 milliliters of blood." (ECF No. 21-1 at 37.) And the second blood draw was tested and found to have "0.153 grams of ethanol for 100 milliliters of blood." (*Id.* at 38.)

      The defense presented the testimony of expert witness Dan Berkabile, "a forensic toxicologist, medical technologist." (ECF No. 21-2 at 21.) Berkabile testified that the Las Vegas Metropolitan Police Department Manual provides that, when drawing blood, "tubes of blood will be inverted at least 10 times by medical personnel so that the blood will mix properly with the anticoagulant inside the tube." (*Id.* at 74–75.) Because the EMT who drew Chrisman's blood only

2

inverted the tube "a couple of times," Berkabile testified that Chrisman's blood samples were not acceptable for testing since the "failure to mix could result in . . . microorganisms creating independent ethanol alcohol." (*Id.* at 75.)

During its rebuttal, the prosecution recalled the EMT who drew Chrisman's blood. (ECF No. 22-1 at 60.) The EMT testified that she "always follow[ed] the policies and procedures that were set in place." (*Id.* at 61.) The prosecution then called Dr. Raymond Kelly, a forensic toxicologist, who testified that upon drawing blood the vial should be inverted "a few times to mix it" with the chemicals. (*Id.* at 62, 71.) When asked, in his "professional opinion, how many times [he] believe[d] would be necessary to ensure a mixture," Dr. Kelly testified, "[t]he more the better, but probably three or four would be enough." (*Id.* at 71.) Berkabile then testified again for the defense during his surrebuttal and reiterated that he did not "believe the samples that were sent to the Metropolitan Police Department were forensically acceptable for testing" due to the inversion issue so there was "[a] potential for . . . clots and . . . [y]east." (*Id.* at 204.)

A jury found Chrisman guilty of DUI. (ECF No. 23-2.) Chrisman appealed, and the Nevada Supreme Court affirmed. (ECF No. 25-7.) Chrisman did not file a post-conviction habeas petition in the state district court. (*See* ECF No. 3 at 1–2.)

## II.  GOVERNING STANDARDS OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

    The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

4

### III. DISCUSSION

#### A.    Ground 1—sufficiency of the evidence

In ground 1, Chrisman alleges that the State failed to prove the element of "highway" as defined in Nev. Rev. Stat. § 484A.095 in violation of his constitutional right to due process. (ECF Nos. 1 at 5; 37 at 4.) Specifically, Chrisman argues that the State failed to present any evidence that the roadway in question was "dedicated to a public authority." (ECF No. 37 at 11.)

##### 1.    Background information

Prior to the defense's case-in-chief, Chrisman moved to dismiss the charges based on the prosecution's failure to meet its burden of establishing the element of a "highway." (ECF No. 21-2 at 4.) The state district court denied the motion, reasoning, *inter alia*, that (1) it did not "think that there's a requirement . . . that [the prosecutor] would have to bring in some kind of certified governmental document demonstrating that [the road] was dedicated, as opposed to . . . just the general public being familiar with that road as a road to which the public has access," (2) it could take judicial notice that the road constituted a highway under the statute but did not think it was necessary, and (3) "the police officer himself who is familiar with that [road] by way of his routine duties said it's a public road that has traffic on it that he routinely patrols." (*Id.* at 8, 11–12.)

##### 2.    Sufficiency of the evidence

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A federal habeas petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). On direct review of a sufficiency of the evidence claim, a state court must determine whether "*any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The evidence is to be viewed "in the light most favorable to the prosecution." *See id*. Federal habeas relief is available only if the state-court determination that the evidence was sufficient to support a conviction was an "objectively unreasonable" application of *Jackson*. *See Juan H.*, 408 F.3d at 1275 n.13.

Sufficiency of the evidence claims are judged by the elements defined by state law. *Jackson*, 443 U.S. at 324 n.16. And Nevada law provides, as relevant here, that "[i]t is unlawful for any person . . . to drive . . . a vehicle on a highway or on premises to which the public has access" if that person, "within 2 hours after driving[,] . . . [has] a concentration of alcohol of 0.08 or more." Nev. Rev. Stat. § 484C.110(1). Regarding the first location element, "highway" is defined as "the entire width between the boundary lines of every way dedicated to a public authority when any part of the way is open to the use of the public for purposes of vehicular traffic, whether or not the public authority is maintaining the way." Nev. Rev. Stat. § 484A.095. And "public authority," as used in the highway definition, is defined as "the Department of Transportation or the local authority having jurisdiction to enact laws or ordinances or adopt regulations relating to traffic over a highway." Nev. Rev. Stat. § 484A.195; *see also Lee v. State*, 116 Nev. 452, 454, 997 P.2d 138, 140 (2000) (holding that "a road does not become dedicated to a public authority for purposes of NRS chapter 484 simply because the public has access to it"). Regarding the second location element in the DUI statute, "premises to which the public has access" is defined as "property in private or public ownership onto which members of the public regularly enter, are reasonably likely to enter, or are invited or permitted to enter as invitees or licensees." Nev. Rev. Stat. § 484A.185(1).

### 3. State court determination

In affirming Chrisman's judgment of conviction, the Nevada Supreme Court held:

> Chrisman argues that the State failed to prove that he was stopped on a "highway" under NRS 484C.110 because the State presented no evidence that the road in question was "dedicated to a public authority." NRS 484A.095. Evidence is sufficient to support a verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Higgs v. State*, 126 Nev. 1, 11, 222 P.3d 648, 654 (2010) (internal quotations omitted). NRS 484C.110(1)(c) states the following:
>
>> It is unlawful for any person who:
>>
>> Is found by measurement within 2 hours after driving or being in actual physical control of a vehicle to have a concentration of alcohol of 0.08 or more in his or her blood or breath,
>>
>> to drive or be in actual physical control of a vehicle on a highway *or* on premises to which the public has access.
>
> (Emphasis added.) NRS 173.075(2) authorizes disjunctive pleading and, where "a single offense may be committed by one or more specified means, and those means are charged alternatively, the state need only prove one of the alternative means in order to sustain a conviction.["] *State v. Kirkpatrick*, 94 Nev. 628, 630, 584 P.2d 670, 671-72 (1978).
>
> Here, after the State completed its case-in-chief, Chrisman moved to dismiss the case because the State did not prove the definition of "highway," one of the elements of the offense, as the State did not prove that Warm Spring Road was "dedicated to a public authority." We conclude that because the State charged Chrisman in the alternative, the State only needed to prove that he drove under the influence on a highway or on premises to which the public had access. The officer testified that he routinely patrols Warm Spring Road, and he would not need to do so if it were not a road on which the public regularly travels. The district court also found that Warm Spring Road is commonly known as a public road. Therefore, we hold that any rational trier of fact could conclude that Chrisman drove under the influence on a road to which the public has access and there was sufficient evidence to prove the "highway" element under NRS 484C.110.

(ECF No. 25-7 at 8–9.) Following a petition for rehearing, the Nevada Supreme Court amended his previous order as follows: "The following language is deleted: 'there was sufficient evidence to prove the "highway" element under NRS 484C.110.' That language is replaced with the

following: 'there was sufficient evidence to convict Chrisman under NRS 484C.110.'" (ECF No. 25-9 at 2.)

Chrisman argues that the "premises" location theory was removed, leaving only the "highway" location theory, so the Nevada Supreme Court's decision was based on an unreasonable determination of the facts. (ECF No. 37 at 5 n.5.) During the discussion about jury instructions, Chrisman's counsel asked if the "premises" jury instruction should remain because he did not "think that premises should be in there because there was no evidence at all." (ECF No. 22-1 at 111.) The state district court replied, "[w]e don't need premises," and the prosecution agreed. (*Id.*) The state district court then "pull[ed] it." (*Id.*)

Even though the jury was instructed on the definition of "highway" and not on the definition of "premises to which the public has access," which notably is self-explanatory, Chrisman fails to support his conclusion that the "premises" location theory was abandoned. Indeed, Jury Instruction No. 4, which identified "[t]he elements of Driving Under the Influence," provided the following as the first element that must be met: "[a] person . . . driving or in actual physical control of a motor vehicle on or off the highway *or* on premises to which the public has access." (ECF No. 23-3 at 5 (emphasis added).) And markedly, Jury Instruction No. 4 instructed the jurors that they were not to consider two theories under the second element of proving impairment, but it did not instruct them that they were not to consider the "premises" theory under the first element. (*See id.*) Thus, Chrisman fails to demonstrate that the Nevada Supreme Court's decision, which relied on the "premises" location theory, was based on an unreasonable determination of the facts.

### 4. Analysis

As the Nevada Supreme Court reasonably noted, Sergeant Rios testified that he routinely worked in the area of West Warm Springs Road and Cimarron, identifying a hospital at that intersection. (ECF No. 20-1 at 40, 42.) Viewing the evidence "in the light most favorable to the prosecution" (*Jackson*, 443 U.S. at 319), which would support a finding that the road was one on which the public regularly travels, the Nevada Supreme Court's determination that a rational trier of fact could have found beyond a reasonable doubt that Chrisman was driving his vehicle on a premises to which the public had access constitutes an objectively reasonable application of clearly established federal law. *In re Winship*, 397 U.S. at 364; *Juan H.*, 408 F.3d at 1274; Nev. Rev. Stat. §§ 484C.110(1), 484A.185(1). Accordingly, Chrisman is not entitled to federal habeas relief for ground 1.

## B. Ground 2—*ex post facto* law

In ground 2, Chrisman alleges that the resurrection of the time-barred limitation period for enhancement of his 1999 DUI conviction violates the prohibition against *ex post facto* laws. (ECF No. 1 at 12.) Specifically, Chrisman argues Nev. Rev. Stat. §484C.410 unconstitutionally eliminated the seven-year enhancement limitations defense for a subsequent prosecution, altered the legal consequences attached to his 1999 conviction, and unconstitutionally resurrected the time-barred enhancement limitations. (ECF No. 37 at 18, 19, 25.)

### 1. Background information

On June 28, 1998, Chrisman was arrested for a DUI causing death. (*See* ECF No. 16-2 at 199.) On February 25, 1999, Chrisman pleaded guilty to the charge. (*Id.* at 83.) On March 9, 2016, Chrisman moved to dismiss his instant DUI charge before the state justice court, arguing a

violation of the prohibition against *ex post facto* laws. (*Id.* at 76.) The state justice court denied the motion. (*Id.* at 199–205.)

In 2005, Nev. Rev. Stat. § 484.3792, now known as Nev. Rev. Stat. §484C.410, was amended to add, as is relevant here, the following provision: a person previously convicted of "[a] homicide resulting from driving or being in actual physical control of a vehicle while under the influence of intoxicating liquor" and who is convicted of another DUI "is guilty of a category B felony." *See* 2005 Nev. Stat., ch. 193, § 3, at 608; *see also* 2005 Nev. Stat., ch. 6, § 15, at 103. Previously, "a prior felony DUI conviction [could] be used to enhance a subsequent DUI conviction" only if "the prior offense occurred within 7 years immediately preceding the date of the principal offense." *Speer v. State*, 116 Nev. 677, 681, 5 P.3d 1063, 1065 (2000).

### 2. Relevant law

The Constitution's *Ex Post Facto* Clause provides that "[n]o State shall . . . pass any . . . ex post facto [l]aw." Art. I, § 10, cl. 1; *see also* Art. I, § 9, cl. 3 ("No . . . ex post facto [l]aw shall be passed."); *Calder v. Bull*, 3 U.S. 386, 390 (1798) ("[A] law shall not be passed concerning, and after the fact, or thing done, or action committed."). The *Ex Post Facto* Clauses "forbids the Congress and the State to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (internal quotation marks omitted). This prohibition was intended "to assure that legislative Acts g[a]ve fair warning of their effect and permit individuals to rely on their meaning until explicitly changed" and to "restrict[ ] governmental power by restraining arbitrary and potentially vindictive legislation." *Id.* at 28–29. There are two elements that "must be present for a criminal or penal law to be ex post facto: it must be

retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* at 29 (internal footnote omitted).

### 3. State court determination

In affirming Chrisman's judgment of conviction, the Nevada Supreme Court held:

> Chrisman argues that NRS 484C.410, as amended in 2005, *see* 2005 Nev. Stat. Spec. Sess., ch. 6, § 15, at 103, violates the prohibition against ex post facto laws because it allows the State to use his 1999 conviction for a penalty enhancement in 2018, when at the time of his prior conviction, use of that conviction for enhancement purposes was limited to seven years. "Any law which was passed after the commission of the offense for which the party is being tried is an ex post facto law when it inflicts a greater punishment than the law annexed to the crime at the time it was committed." *Hollander v. Warden*, 86 Nev. 369, 372-73, 468 P.2d 990, 992 (1970). However, "[t]he enactment of a statute or its amendment which imposes a harsher penalty after prior convictions is not an ex post facto law." *Id.* at 373, 468 P.2d at 992. These recidivist statutes do "not increase the punishment for that crime for which he has been on trial but merely allows increased punishment for his status as a repeat offender." *Id.*
>
> Here, *Hollander* clarifies that increasing punishments for repeat offenders is not an ex post facto law and, therefore, does not violate the prohibition against ex post facto laws. *Id.* Chrisman is not being punished for his 1999 conviction again, he is being punished for his 2018 DUI conviction as a repeat offender. Accordingly, we conclude that NRS 484C.410 does not violate the prohibition against ex post facto laws.

(ECF No. 25-7 at 11–12.)

### 4. Analysis

As the Nevada Supreme Court reasonably noted, recidivist statutes, which increase punishments for repeat offenders, do not violate the prohibition against *ex post facto* laws. *See Parke v. Raley*, 506 U.S. 20, 27 (1992) ("[W]e have repeatedly upheld recidivism statutes 'against contentions that they violate constitutional strictures dealing with . . . *ex post facto* laws.'"); *United States v. Kaluna*, 192 F.3d 1188, 1199 (9th Cir. 1999) (holding that "recidivist statutes do not violate the Ex Post Facto Clause if they are 'on the books at the time the [present]

11

offense was committed'"). Here, Nev. Rev. Stat. §484C.410 was amended in 2005, and Chrisman committed the instant offense in 2013. Therefore, the Nevada Supreme Court's determination that the use of Nev. Rev. Stat. §484C.410 to enhance the penalty of Chrisman's 2018 DUI conviction did not violate the prohibition against *ex post facto* laws constitutes an objectively reasonable application of clearly established federal law. *Weaver*, 450 U.S. at 28–29; *Parke*, 506 U.S. at 27. Chrisman is not entitled to federal habeas relief for grounds 2.[3]

## IV. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Chrisman. Rule 11 of the Rules Governing Section 2254 Cases requires this court issue or deny a certificate of appealability (COA). This court has sua sponte evaluated the remaining claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). For procedural rulings, a COA will issue only

---

[3] Chrisman relies on *Stogner v. California* to support his contention that Nev. Rev. Stat. §484C.410 unconstitutionally revived an expired statutes of enhancement limitations periods. (ECF No. 37 at 18.) According to *Stogner*, "[a] law enacted after expiration of a previously applicable limitations period violates the *Ex Post Facto* Clause when it is applied to revive a previously time-barred prosecution." 539 U.S. 607, 632–33 (2003). Importantly, in *Stogner*, California "brought a criminal prosecution after expiration of the time periods set forth in previously applicable statutes of limitations . . . under the authority of a new law." *Id.* at 609. Here, however, Chrisman's instant DUI prosecution was not limited by any statutes of limitations; rather, the issue concerns merely the enhancement on his penalty as a repeat offender. Consequently, *Stogner* appears inapposite. Indeed, Chrisman's attempt to couch his argument in terms of Nev. Rev. Stat. §484C.410's effect on his 1999 conviction is misplaced. Nev. Rev. Stat. §484C.410 did not alter the consequences attached to Chrisman's 1999 conviction, but rather increased the penalty for his 2018 conviction. *See Gryger v. Burke*, 334 U.S. 728, 732 (1948) (finding that "[t]he sentence as a . . . habitual criminal is not to be viewed as . . . [an] additional penalty for the earlier crimes" but "a stiffened penalty for the latest crime"); *Nichols v. United States*, 511 U.S. 738, 747 (1994) ("Enhancement statutes, . . . [such as] recidivist statutes . . . , do not change the penalty imposed for the earlier conviction."); *United States v. Arzate-Nunez*, 18 F.3d 730, 734 (9th Cir. 1994) ("For purposes of analyzing repeat offender statutes and statutes increasing penalties for future crimes based on past crimes, the relevant 'offense' is the current one, not the predicate crime.").

if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this court's procedural ruling was correct. *Id.*

Applying these standards, this court finds that a certificate of appealability is unwarranted.

## V.     CONCLUSION

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is DENIED.

IT IS FURTHER ORDERED that Petitioner is denied a certificate of appealability.

IT IS FURTHER ORDERED that the Clerk of the Court is to enter judgment accordingly and close this case.

Dated:   March 23, 2022

_____
KENT J. DAWSON
UNITED STATES DISTRICT JUDGE